[No. S140413. May 29, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD ALEX MILES, Defendant and Appellant.

COUNSEL

Scott Conklin, under appointment by the Supreme Court, and John Hardesty, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Manuel M. Medeiros, State Solicitor General, Robert R. Anderson and Mary Jo Graves, Chief Assistant Attorneys General, Michael P. Farrell, Assistant Attorney General, Mathew K. Chan, Virna L. DePaul, Janet E. Neeley, Stephen G. Herndon and Rachelle A. Newcomb, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BAXTER, J.—After a jury convicted defendant of multiple felony offenses, a court trial was held on the allegation, for purposes of sentencing under the "Three Strikes" law (Pen. Code, §§ 667, subds. (d), (e), 1170.12, subds. (b), (c)), that he had suffered two prior " 'serious' felony' " convictions (id., § 1192.7, subd. (c)), including a 1976 federal conviction under 18 United States Code section 2113(a).[1] One of the two distinct offenses set forth in section 2113(a), as in effect in 1976, was the taking, or attempted taking, of bank property from the person or presence of another by force, violence, or intimidation. Such acts constitute the California serious felony of bank robbery. (Pen. Code, § 1192.7, subds. (c)(19), (d).) The other offense set forth in section 2113(a)—entering, or attempting to enter, a bank with felonious or larcenous intent—includes many of the traditional elements of nonresidential burglary, and does not correspond to any California serious felony.

To prove the 1976 federal conviction, and its nature as a serious felony, the People presented certified documents from the record of that conviction, including a "Judgment and Probation/Commitment Order" signed by a federal judge (federal judgment form or 1976 federal judgment form). The federal judgment form recites that defendant pled guilty to "armed bank robbery" and "kidnapping" in violation of sections 2113(a), 2113(d), and 2113(e). On the basis of this evidence, the instant trial court found that the 1976 federal

---

[1] All further unlabeled statutory references are to title 18 of the United States Code.

conviction was for the California serious felony of bank robbery. The court therefore used this prior conviction as a strike to enhance defendant's sentences for his current crimes. The Court of Appeal affirmed.

As below, defendant here urges that the "bank robbery" notation on the federal judgment form, even as augmented by the references to "arm[ing]" and "kidnapping," was insufficient evidence his 1976 conviction occurred under the prong of section 2113(a) that qualified as a California serious felony. To resolve the issue, we apply principles discussed in *People v. Delgado* (2008) 43 Cal.4th 1059 [77 Cal.Rptr.3d 259, 183 P.3d 1226] (*Delgado*) to the more complicated facts of this case.

The increased complexity here arises from the structure and language of section 2113. This statute, in its entirety, includes a group of bank-related offenses under the title "Bank robbery and incidental crimes." However, nowhere in the body of the statute are the terms "robbery" or "bank robbery" used to describe any of the offenses set forth therein.

Thus, unlike in *Delgado*, there is no direct semantic link between the statute under which defendant was convicted, the words used by the convicting court to describe his crime, and one of the serious felony offenses enumerated in California law. Nonetheless, as we will explain, the evidence strongly supports the inference that the "armed bank robbery" and "kidnapping" notations on the 1976 federal judgment form were intended to describe a conviction for conduct which, under California law, constitutes the serious felony of bank robbery.

Accordingly, here, as in *Delgado*, there was a sufficient evidentiary basis for the trial court's finding that the prior conviction at issue was for a serious felony. The Court of Appeal so concluded. We will therefore affirm the judgment of that court.

## FACTS AND PROCEDURE

On December 27, 2002, in the parking lot of a shopping mall, defendant, brandishing a gun, approached several drivers and demanded their car keys and personal belongings. Defendant ignored a responding police officer's order to drop the gun, instead raising his weapon in the officer's direction. The officer fired three times as defendant walked toward a store entrance, still holding the weapon. The officer's fourth bullet felled defendant, but he still refused to relinquish the gun, and he appeared to be trying to rise. The officer's fifth bullet knocked defendant flat, and a bystander kicked his gun away.

A jury found defendant guilty of assault with a firearm upon a police officer (Pen. Code, § 245, subd. (d)(1)) (count 1), possession of a firearm by a convicted felon (*id.*, § 12021, subd. (a)(1)) (count 2), four counts of attempted carjacking (*id.*, §§ 215, subds. (a), (b), 664) (counts 3, 5, 7 & 9), and five counts of assault with a firearm (*id.*, § 245, subd. (a)(2)) (counts 4, 6, 8, 12 & 13). As to the count of firearm assault upon a police officer, and three of the attempted carjacking counts (counts 3, 5 & 7), the jury found true that defendant personally used a firearm within the meaning of Penal Code section 12022.53, subdivision (b). (See also *id.*, subd. (a)(5), (7), (18).) As to each count of assault with a firearm, the jury found true that defendant personally used a firearm within the meaning of Penal Code section 12022.5, subdivision (a).[2]

The information also alleged, for purposes of sentence enhancement under Penal Code section 667, subdivision (a)(1) (five-year enhancement of current serious felony conviction for prior serious felony conviction), that defendant had suffered a 1976 federal conviction for "armed bank robbery and kidnapping," and, for purposes of the Three Strikes law (Pen. Code, §§ 667, subds. (c)–(e), 1170.12, subds. (a)–(c)), that he had suffered two prior serious felony convictions—the 1976 federal conviction and a 1972 California conviction for robbery. Defendant waived his right to a jury trial on these allegations, and they were tried to the court.

As their sole evidence of the fact and nature of the 1976 federal conviction, the People introduced a package of documents certified by a records custodian of the Federal Bureau of Prisons. This package included a prison fingerprint card, and also the 1976 federal judgment form (i.e., the "Judgment and Probation/Commitment Order") as signed by Judge Philip C. Wilkins of the United States District Court for the Eastern District of California. The federal judgment form recited that on November 30, 1976, defendant was convicted, on his guilty plea, of "violation of 18 U.S.C. 2113(a) (d) (e), armed bank robbery and . . . kidnapping, as charged in the First Count of the Indictment," and that he received a 40-year sentence. The federal judgment form further indicated that "Count II of the Indictment," an unspecified charge, would be dismissed. The November 20, 1986, fingerprint card, from the Federal Correctional Institution at Lompoc, California, similarly described the offense as "ARMED BANK ROBBERY & KIDNAP."

---

[2] The jury acquitted defendant of attempted robbery (count 10) and an additional count of attempted carjacking (count 11).

The trial court found true that, as alleged, defendant had sustained two prior serious felony convictions.[3] Accordingly, it imposed, on the current convictions, a third strike sentence of 219 years to life.[4]

Defendant appealed, urging only that the evidence was insufficient to prove his 1976 federal conviction was for a California serious felony. The Court of Appeal affirmed. Like the trial court, the Court of Appeal concluded that the "armed bank robbery" notation on the 1976 federal judgment form was a clear reference to the prong of section 2113(a) which, in its 1976 version, conformed to the California serious felony of bank robbery. We granted review. We now conclude that the Court of Appeal's judgment must be affirmed.

## DISCUSSION

Defendant urges, as he did below, that the federal judgment form's description of his 1976 conviction as for "armed bank robbery" and "kidnapping" does not constitute sufficient evidence the conviction was for the crime California deems the serious felony of bank robbery, because the form does not clearly and reliably specify which of the two forms of offense set forth in section 2113(a) was committed. Hence, he insists, the 1976 conviction could not be used to subject him to third strike sentences for his current offenses. (Pen. Code, §§ 667, subds. (d), (e), 1170.12, subds. (b), (c).) For several reasons, we disagree.

In 1976, when defendant was convicted under section 2113(a), this subsection provided a fine, or imprisonment up to 20 years, or both, for two distinct categories of offenders.

The first paragraph of section 2113(a) described a person who, "by force and violence, or by intimidation, [took], or attempt[ed] to take, from the person or presence of another any property or money or any other thing of

---

[3] In response to defense counsel's argument that the notation on the 1976 federal judgment form did not reliably indicate a California serious felony, the court commented, "I'm relying on the part [of the federal judgment form] that says 'armed bank robbery,' and that's why I don't think it's a second-degree burglary of a bank. I think it's 'armed bank robbery.'"

[4] The sentence was computed as follows: Count 1, 25 years to life, plus 10 consecutive years for the personal firearm enhancement; count 2, stayed; count 3, 25 years to life, consecutive to count 1, plus 10 consecutive years for the personal firearm enhancement; count 4, stayed; count 5, 25 years to life, consecutive to counts 1 and 3, plus 10 consecutive years for the personal firearm enhancement; count 6, stayed; count 7, 25 years to life, consecutive to counts 1, 3, and 5, plus 10 consecutive years for the personal firearm enhancement; count 8, stayed; count 9, 25 years to life, consecutive to counts 1, 3, 5, and 7; count 12, 25 years to life, consecutive to counts 1, 3, 5, 7, and 9, plus four consecutive years for the personal firearm enhancement; count 13, 25 years to life, consecutive to counts 1, 3, 5, 7, 9, and 12.

value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association." (See Pub.L. No. 91-468 (Oct. 19, 1970) 84 Stat. 994, 1017.)

Then, as now, the second paragraph of section 2113(a) described a person who "enter[ed] or attempt[ed] to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny."

■ Then, as now, additional subsections of section 2113 listed further crimes against banks, credit unions, and savings and loan associations. These offenses included stealing or purloining money or property from such an institution (§ 2113(b)) and the knowing receipt, concealment, sale, or disposal of money or property stolen from such an institution (§ 2113(c)). Then, as now, the statute provided additional punishment for one who, while committing an offense under section 2113(a) or section 2113(b), assaulted any person or jeopardized a life by use of a dangerous weapon (§ 2113(d)), or who, while committing any offense set forth in the statute, or while avoiding apprehension or escaping arrest or confinement therefor, killed any person or forced any person, against that person's will, to accompany the offender (§ 2113(e)). Section 2113, in its entirety, appeared in the United States Code under the title "Bank robbery and incidental crimes."

■ Penal Code section 1192.7, subdivision (c) sets forth the categories of convictions California deems to be for serious felonies. Though there is no California convictable offense of bank robbery, Penal Code section 1192.7, subdivision (c) lists a crime of this name as a serious felony, a prior conviction for which may enhance the sentence for a subsequent offense. (*Id.*, subd. (c)(19).) For this purpose, Penal Code section 1192.7 defines " 'bank robbery' " as "to take or attempt to take, by force or violence, or by intimidation from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association." (*Id.*, subd. (d).)

The California serious felony of bank robbery substantially coincides with the offense described in the *first* paragraph of section 2113(a) as in effect in

1976.[5] However, there is no California serious felony that corresponds to the crime described in the *second* paragraph of section 2113(a).[6] Thus, evidence that the defendant suffered a previous conviction under section 2113(a), standing alone, cannot establish that the conviction was for a serious felony under California law.

■ The People must prove all elements of an alleged sentence enhancement beyond a reasonable doubt. (*People v. Tenner* (1993) 6 Cal.4th 559, 566 [24 Cal.Rptr.2d 840, 862 P.2d 840] (*Tenner*).) Where, as here, the mere fact of conviction under a particular statute does not prove the offense was a serious felony, otherwise admissible evidence from the entire record of the conviction may be examined to resolve the issue. (E.g., *People v. Reed* (1996) 13 Cal.4th 217, 222–223 [52 Cal.Rptr.2d 106, 914 P.2d 184]; *People v. Guerrero* (1988) 44 Cal.3d 343, 351–352 [243 Cal.Rptr. 688, 748 P.2d 1150].) This rule applies equally to California convictions and to those from foreign jurisdictions. (*People v. Woodell* (1998) 17 Cal.4th 448, 453 [71 Cal.Rptr.2d 241, 950 P.2d 85]; *People v. Myers* (1993) 5 Cal.4th 1193, 1198–1201 [22 Cal.Rptr.2d 911, 858 P.2d 301].)

Such evidence may, and often does, include certified documents from the record of the prior proceeding and commitment to prison. (Pen. Code, § 969b; Evid. Code, § 1280 [hearsay exception for contemporaneous official records]; *People v. Prieto* (2003) 30 Cal.4th 226, 258–259 [133 Cal.Rptr.2d 18, 66 P.3d 1123]; *People v. Henley* (1999) 72 Cal.App.4th 555, 559–560 [85 Cal.Rptr.2d 123] (*Henley*); *People v. Haney* (1994) 26 Cal.App.4th 472, 475 [31 Cal.Rptr.2d 547].) A court document, prepared contemporaneously with the conviction, as part of the record thereof, by a public officer charged with that duty, and describing the nature of the prior conviction for official purposes, is relevant and admissible on this issue. (*Delgado, supra,* 43 Cal.4th at pp. 1065, 1070.) Indeed, defendant does not now seriously dispute that the 1976 federal judgment form was admissible evidence of the fact and nature of his 1976 conviction.

---

[5] In 1986, after defendant's federal conviction, the first paragraph of section 2113(a) was amended to include persons who "obtain[] or attempt[] to obtain by extortion" money or property owned by, or in the care, custody, possession, management, or control of a bank, credit union, or savings and loan association. (Pub.L. No. 99-646 (Nov. 10, 1986) 100 Stat. 3592, 3616.) The California serious felony of bank robbery, added two years later (Pen. Code, § 1192.7, subds. (c)(19), (d), added by Stats. 1988, ch. 432, § 2, pp. 1815–1816), includes no extortion form of the offense.

[6] The second paragraph of section 2113(a) describes the crime of entering, or attempting to enter, a bank, credit union, or savings and loan association with felonious or larcenous intent. This would constitute burglary or attempted burglary under California law. (Pen. Code, §§ 21a, 459, 664.) Penal Code section 1192.7 lists "any burglary of the first degree" as a serious felony (*id.,* subd. (c)(18)), but only a burglary of an "inhabited dwelling house," as defined, is a first degree burglary in California (Pen. Code, § 460, subd. (a)).

However, if the prior conviction was for an offense that can be committed in multiple ways, and the record of the conviction does not disclose how the offense was committed, a court must presume the conviction was for the least serious form of the offense. (*People v. Rodriguez* (1998) 17 Cal.4th 253, 262 [70 Cal.Rptr.2d 334, 949 P.2d 31] (*Rodriguez*); *People v. Guerrero, supra*, 44 Cal.3d 343, 354–355 [243 Cal.Rptr. 688, 748 P.2d 1150]; *People v. Watts* (2005) 131 Cal.App.4th 589, 596 [32 Cal.Rptr.3d 260]; *People v. Cortez* (1999) 73 Cal.App.4th 276, 280 [86 Cal.Rptr.2d 234]; see *People v. Jones* (1999) 75 Cal.App.4th 616, 632 [89 Cal.Rptr.2d 485] (*Jones*).) In such a case, if the serious felony nature of the prior conviction depends upon the particular conduct that gave rise to the conviction, the record is insufficient to establish that a serious felony conviction occurred.

■ On the other hand, the trier of fact may draw *reasonable inferences* from the record presented. Absent rebuttal evidence, the trier of fact may presume that an official government document, prepared contemporaneously as part of the judgment record and describing the prior conviction, is truthful and accurate. Unless rebutted, such a document, standing alone, is sufficient evidence of the facts it recites about the nature and circumstances of the prior conviction. (E.g., *People v. Epps* (2001) 25 Cal.4th 19, 27 [104 Cal.Rptr.2d 572, 18 P.3d 2]; *Henley, supra*, 72 Cal.App.4th 555, 561.)

On review, we examine the record in the light most favorable to the judgment to ascertain whether it is supported by substantial evidence. In other words, we determine whether a rational trier of fact could have found that the prosecution sustained its burden of proving the elements of the sentence enhancement beyond a reasonable doubt. (E.g., *Tenner, supra*, 6 Cal.4th 559, 567; *Jones, supra*, 75 Cal.App.4th 616, 631.)

Applying these principles, we held in *Delgado* that the description of a prior conviction, contained in the abstract of judgment there at issue, was sufficient evidence the conviction was for a serious felony. The prior conviction in *Delgado* occurred under Penal Code section 245, subdivision (a)(1), which punishes assault "*with a deadly weapon . . . other than a firearm or* by any means of force likely to produce great bodily injury." (Italics added.) Assault with "a dangerous or deadly weapon" is a California serious felony (Pen. Code, § 1192.7, subd. (c)(23)), but assault by force likely to produce great bodily injury is not.

In *Delgado*, as evidence that the prior conviction occurred under the deadly weapon prong of Penal Code section 245, subdivision (a)(1), and was thus for a serious felony, the People introduced the abstract of judgment. The abstract described the conviction as for " 'PC' " " '245(A)(1)' " " 'Asslt w DWpn.' " (*Delgado, supra*, 43 Cal.4th at pp. 1064, 1069.) There was no dispute that

these notations stood, respectively, for " 'Penal Code section 245(a)(1),' " and " 'assault with a deadly weapon.' " (*Id.*, at p. 1069.) Nonetheless, defendant Delgado urged that the "Asslt w DWpn" notation might simply be an arbitrary form of clerical shorthand referring to Penal Code section 245, subdivision (a)(1) *in its entirety*, and thus did not reliably indicate which prong of the subdivision had been violated. (*Delgado, supra,* at pp. 1070–1071.)

The trial court and the Court of Appeal rejected Delgado's contention. Drawing *reasonable inferences* from the abbreviated notation, both courts concluded it was meant to convey that the defendant had been convicted specifically under the deadly weapon prong, and that he had thus suffered a serious felony conviction. Our opinion in *Delgado* agrees.

Similarly here, defendant urges that the terse reference to "bank robbery" on the 1976 federal judgment form may simply be a generic and undifferentiated reference to section 2113(a), without further import as to the particular prong of the provision that was violated. In resolving this contention, we face interpretive issues not present in *Delgado*. There, the notation on the abstract of judgment closely conformed to the specific "assault . . . with a deadly weapon" language in Penal Code section 245, subdivision (a)(1), and to the similar "assault with a deadly weapon" language in Penal Code section 1192.7, subdivision (c), but it omitted the "great bodily injury" language also set forth in Penal Code section 245, subdivision (a)(1). Thus, a direct inference arose that the notation was intended as a specific reference to the deadly weapon prong of the subdivision.

By contrast, section 2113(a), as in effect in 1976, contained no clear internal labels from which we can directly infer that the notation on the 1976 federal judgment form at issue here describes a California serious felony. As noted above, one of the two offenses set forth in section 2113(a) constitutes the California serious felony of bank robbery. However, section 2113 itself does not use the terms "robbery" or "bank robbery" in connection with this or any other particular form of offense set forth in the statute.

Hence, the *express words* of section 2113 give no direct clue to what Judge Wilkins meant when he used the terms "armed bank robbery" and "kidnapping" to describe the nature of defendant's 1976 federal conviction. Nonetheless, there are numerous bases for the reasonable inference that he intended to describe the forcible taking form of offense set forth in section 2113(a), and thus delineated a California serious felony.

■ In the first place, as in *Delgado*, the relevant judgment record *both* specifies the particular statute under which defendant was convicted *and*

includes a brief description in words of the offense. Where, as here, the statutory provision includes more than one form of offense, one may reasonably infer, absent contrary indicia, that the additional prose notation is not mere surplusage, but an attempt to delineate which form was violated. As the People suggest, this consideration weighs against defendant's premise that Judge Wilkins's "robbery" notation on the 1976 federal judgment form was simply a shorthand reference to section 2113(a) as a whole.

Moreover, though the word "robbery" does not appear in the body of section 2113(a), one—but only one—of the two forms of the offense set forth in the 1976 version of section 2113(a) closely corresponded to the crime referred to in both legal and common parlance as robbery. This was the form of offense described as the taking, or attempted taking, of bank property from the person of another "by force and violence, or by intimidation." (*Ibid.*, see, e.g., Pen. Code, § 211 ["[r]obbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear"]; Black's Law Dict. (7th ed. 1999) p. 1329, col. 1 ["robbery" is "[t]he illegal taking of property from the person of another, or in the person's presence, by violence or intimidation; aggravated larceny"]; Garner, Dict. of Modern Legal Usage (2d ed. 1995) p. 774, col. 2 ["robbery" is "aggravated larceny, i.e., larceny from the person by violence or intimidation"]; Merriam-Webster's Collegiate Dict. (11th ed. 2004) p. 1077, col. 2 ["robbery" is "larceny from the person or presence of another by violence or threat"]; American Heritage Dict. (4th ed. 2000) p. 1506, col. 1 ["robbery" is "[t]he act or an instance of unlawfully taking the property of another by the use of violence or intimidation"]; 14 Oxford English Dict. (2d ed. 1989) p. 2, col. 2 [first definition: "robbery" is "[t]he action or practice of feloniously seizing, by violence or intimidation, property belonging to another"]; Webster's New Internat. Dict. (2d ed. unabridged 1958) p. 2157, col. 1 ["robbery" is "larceny of property from the person or immediate presence of another in possession thereof accomplished by violence or putting him in fear"].)

The other form of offense set forth in section 2113(a)—entry of a bank, credit union, or savings and loan association with felonious or larcenous intent—was, and is, a specialized form of the crime known in legal and common parlance as *burglary*. (See, e.g., Pen. Code, § 459 [person who enters specified premises "with intent to commit grand or petit larceny or any felony is guilty of burglary"]; Black's Law Dict., *supra*, p. 191, col. 2 ["burglary" is "[t]he common-law offense of breaking and entering another's dwelling at night with the intent to commit a felony" or "[t]he modern statutory offense of breaking and entering any building . . . with the intent to commit a felony" or sometimes also petit larceny]; Garner, Dict. of Modern Legal Usage, *supra*, p. 122, col. 1 ["burglary," in the modern sense, is "the act of breaking and entering a building with the intent to commit a felony"];

Merriam-Webster's Collegiate Dict., *supra*, p. 165, col. 2 ["burglary" is *"broadly:* the entering of a building with the intent to commit a crime"]; American Heritage Dict., *supra*, p. 248, col. 2 ["burglary" is "[t]he act of entering a building or other premises with the intent to commit theft"]; 2 Oxford English Dict., *supra*, p. 668, col. 3 ["burglary" is "[t]he crime of breaking (formerly by night) into a house with intent to commit [a] felony. Now, a statutory crime of entering a building by day or night with the intention of committing a theft or other serious offence"]; Webster's New Internat. Dict., *supra*, p. 358, col. 3 [at common law, "burglary" is "[b]reaking and entering the dwelling house of another, in the nighttime, with intent to commit a felony therein," though modern statutes may "cover such offenses committed by day, or the like entering of shops, factories, warehouses, etc."].)

Consistent with these traditional understandings, when the forcible taking offense now set forth in the first paragraph of section 2113(a) was first adopted in 1934, it was referred to in the marginal notes of the Statutes at Large as "Robbery." (Pub.L. No. 73-235 (May 18, 1934) 48 Stat. 783.) When this provision was amended in 1937 to add the "entering" offense now set forth in the second paragraph of section 2113(a), the marginal notation in the Statutes at Large described the amended statute as "Bank robbery; burglary . . . added." (Pub.L. No. 75-349 (Aug. 24, 1937) 50 Stat. 749.)

The United States Supreme Court used similar distinguishing terminology in two decisions recounting the early history and development of the statute now codified as section 2113. In *Jerome v. United States* (1943) 318 U.S. 101 [87 L.Ed. 640, 63 S.Ct. 48] (*Jerome*), the court explained: "Prior to 1934, banks organized or operating under federal law were protected against embezzlement and like offenses by [various federal statutes]. But such crimes as *robbery, burglary,* and *larceny* directed against such banks were punishable only under state law. By 1934 great concern had been expressed over interstate operations by gangsters against banks—activities with which local authorities were frequently unable to cope. [Citation.] The Attorney General, in response to that concern, recommended legislation embracing certain new federal offenses." (*Id.,* at p. 102, italics added, fn. omitted.) Sections dealing with "larceny" and "burglary" against banks were struck from the original bill during the legislative process, but as finally enacted, the bill *"retained the robbery provision now contained in the first clause of § 2(a) of the Bank Robbery Act* [as amended, now the first paragraph of section 2113(a)]." (*Jerome, supra,* at p. 103, italics added, fn. omitted.)

"In 1937 the Attorney General recommended the enlargement of the Bank Robbery Act 'to include *larceny* and *burglary* of the banks' protected by it. [Citation.] The fact that the 1934 statute was limited to *robbery* was said to

have produced 'some incongruous results[']—a 'striking instance' of which was the case of a man who stole a large sum from a bank but who was not guilty of *robbery* because *he did not display force or violence and did not put any one in fear*. [Citation.] The [1937] bill as introduced [citation] added to § 2(a) two new clauses—one defining larceny and the other making it a federal offense to enter or attempt to enter any bank with intent to commit therein 'any larceny or other depredation.' For reasons not disclosed in the legislative history, the House Judiciary Committee substituted 'any felony or larceny' for 'any larceny or other depredation.' [Citation.] With that change and with an amendment to the larceny clause distinguishing between grand and petit larceny [citation], § 2(a) was enacted in its present form." (*Jerome, supra*, 318 U.S. 101, 103–104, italics added, fn. omitted.)

In *Prince v. United States* (1957) 352 U.S. 322 [1 L.Ed.2d 370, 77 S.Ct. 403] (*Prince*), the court noted that section 2113 "creates and defines several crimes incidental to and related to thefts from banks organized or insured under federal laws. Included are *bank robbery* and *entering a bank with intent to commit a robbery.*" (*Prince, supra*, at pp. 323–324, italics added, fn. omitted.) The court reiterated the statute's history as follows: "The original Bank Robbery Act was passed in 1934. It covered *only robbery*, robbery accompanied by an aggravated assault, and homicide perpetrated in committing a robbery or escaping thereafter. In 1937 the Attorney General requested that the Act be amended. In his letter proposing the bill, the Attorney General declared that 'incongruous results' had developed under the existing law. He cited as a striking instance the case of '. . . a man [who] was arrested in a national bank while walking out of the building with $11,000 of the bank's funds on his person. He had managed to gain possession of the money during a momentary absence of one of the employees, *without displaying any force or violence and without putting anyone in fear— necessary elements of the crime of robbery*—and was about to leave the bank when apprehended. As a result, it was not practicable to prosecute him under any Federal statute.'

"The Act was amended accordingly to add other crimes less serious than *robbery*. Two *larceny* provisions were enacted: one for thefts of property exceeding $50, the other for lesser amounts. Congress further made it a crime to '. . . enter or attempt to enter any bank, . . . with intent to commit in such bank or building, or part thereof, so used, any felony or larceny . . . .' *Robbery, entering*[,] and *larceny* were all placed in one paragraph of the 1937 Act." (*Prince, supra*, 352 U.S. 322, 325–326, italics added, fn. omitted.)

Thus, we begin with a strong background for concluding that Judge Wilkins's official notation describing the offense committed under section 2113(a) as "bank *robbery*" (italics added) most likely refers to the forcible taking form of the offense, as it existed in 1976. Under the particular facts of

this case, however, we need not, and do not, rely exclusively on the phrase "bank robbery" considered in isolation.

The complete notation on the 1976 federal judgment form indicates that defendant pled guilty under sections 2113(a), 2113(d), and 2113(e) to an "armed" bank robbery that involved "kidnapping." These additional references suggest that defendant was adjudged, on his plea, to have "put[] in jeopardy the life of [a] person by the use of a dangerous weapon or device" within the meaning of section 2113(d),[7] and to have "force[d] [a] person to accompany him without the consent of such person"—in other words, to have taken a hostage—within the meaning of section 2113(e).[8]

It is highly unlikely that one charged and convicted under section 2113(a) only for entering a bank with felonious or larcenous intent, without an attempted or actual taking of property by force and violence or intimidation, would also be found, in the course of the offense, to have placed a victim's life in jeopardy by use of a dangerous weapon and to have taken a hostage.[9] In the absence of any rebuttal evidence as to the nature of the prior conviction, the trial court was entitled, prima facie, to draw the more reasonable inference that it was for committing the California serious felony of bank robbery.[10]

---

[7] In 1976, as it does now, section 2113(d) enhanced the penalty for one who, while committing any violation of section 2113(a) or section 2113(b), "assault[ed] any person, *or put[] in jeopardy the life of any person by the use of a dangerous weapon or device . . . .*" (Italics added.) At the time of defendant's 1976 federal conviction in the Eastern District of California, the applicable Ninth Circuit case law specified that putting life in jeopardy with a dangerous weapon, for purposes of section 2113(d), required " 'a holdup involving the use of a dangerous weapon *actually so used during the robbery* that the life of the *person being robbed* is placed in an objective state of danger.' " (*United States v. Coulter* (9th Cir. 1973) 474 F.2d 1004, 1005, italics added, cert. den. *sub nom. Coulter v. United States,* 429 U.S. 984 [50 L.Ed.2d 595, 97 S.Ct. 502], quoting *Wagner v. United States* (9th Cir. 1959) 264 F.2d 524, 530, cert. den. 360 U.S. 936 [3 L.Ed.2d 1548, 79 S.Ct. 1459].)

[8] In 1976, as it does now, section 2113(e) enhanced the penalty for one who, "in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kill[ed] any person, *or force[d] any person to accompany him without the consent of such person . . . .*" (Italics added.)

[9] Indeed, we would reach a similar conclusion even were we to assume that we could not rely on the 1976 commitment form's verbal descriptions of the violations of sections 2113(d) and 2113(e) to determine which alternative prong of each of those provisions was violated. In other words, even if the section 2113(d) violation involved an assault, rather than dangerous use of a weapon, and the section 2113(e) violation involved a homicide rather than a kidnapping, we would still be persuaded that defendant's violations of those subdivisions made it unlikely his conviction under section 2113(a) was merely for felonious or larcenous entry of a bank.

[10] One can perhaps *conceive* of a scenario in which violations of sections 2113(d) and 2113(e) might attach to a charged violation of section 2113(a) that did not involve an attempted or

As support for his claim that the words "bank robbery" on the 1976 federal judgment form do not adequately specify the forcible taking prong of section 2113(a), defendant cites *U.S. v. Olson* (8th Cir. 2001) 262 F.3d 795 (*Olson*). *Olson* held that an indictment charging the defendant with committing "bank robbery" in violation of section 2113(a) by "tak[ing] [money] from the person and presence of a victim teller" was insufficient to allege the elements of the forcible taking prong of the subdivision. (*Olson, supra,* at pp. 798–799.) Among other things, the court of appeals reasoned that the words "bank robbery" in the charging language did not supply the required elements of force and violence or intimidation, because "all of § 2113 is entitled 'bank robbery.' " (*Olson, supra,* at p. 799.)

But whatever its merits on the narrow issue there presented, *Olson* does not determine what Judge Wilkins meant by the words he used on the 1976 federal judgment form at issue here. For the multiple reasons set forth above, we remain persuaded it was most reasonable for the trial court to infer that the form's denomination of defendant's 1976 offense as "bank robbery" was *not* a mere general reference to section 2113(a).

We note, as an aside, that the indictment at issue in *Olson* injected ambiguity by alleging facts that constituted at most, not forcible taking under section 2113(a), but mere larcenous taking under section 2113(b). Under the circumstances, the *Olson* court's uncertainty about the offense actually charged was perhaps understandable.

No similar basis for uncertainty exists here. Judge Wilkins *both* specified defendant's 1976 offense under section 2113(a) as "bank robbery"—the colloquial term that most closely describes the form of offense set forth in the first paragraph of that provision—*and* indicated that defendant had further violated the "armed" and "kidnapping" provisions of the statute. Judge Wilkins's notation said nothing to cast doubt on whether, in describing the conviction under section 2113(a), he was referring to the specific offense of forcible taking or to some other *offense* set forth in the statute. In the circum-

---

actual taking of property. For instance, such a charge and conviction might theoretically occur if defendant had entered the bank brandishing a weapon, was confronted by security guards before he could take or demand money or property, then assaulted or killed someone, or seized and moved a hostage, while attempting to escape. But, in the absence of rebuttal evidence, a trial court assessing a prior conviction described as for "armed bank robbery" was not required to parse such remote possibilities. It could, as indicated, accept the more reasonable inference that the conviction was for what California would deem the serious felony of bank robbery. (Cf. *People v. McGee* (2006) 38 Cal.4th 682, 706 [42 Cal.Rptr.3d 899, 133 P.3d 1054] [relevant inquiry is whether record discloses "realistic[]" possibility that prior conviction "may have been based on conduct that would not constitute a serious felony under California law"].)

stances before us, the most reasonable inference is that he intended to describe the "force and violence, or . . . intimidation" form of offense set forth in section 2113(a).

Reaching a similar conclusion, the Court of Appeal reasoned, inter alia, that the modern title of section 2113—"Bank robbery *and incidental crimes*" (italics added)—indicates a statutory intent to distinguish the crime traditionally deemed robbery from related, but "incidental," nonrobbery offenses. (But see *Carter v. United States* (2000) 530 U.S. 255, 267 [147 L.Ed.2d 203, 120 S.Ct. 2159].) Defendant responds that, to the extent the title is relevant, Judge Wilkins would have understood "bank robbery" to encompass *both* the offenses set forth in section 2113(a), and perhaps the larcenous crimes now set forth in section 2113(b). The phrase "incidental crimes," defendant maintains, logically refers only to the associated offenses of receiving stolen property, assault, jeopardizing life with a dangerous weapon, killing, and forced accompaniment, as set forth in subsequent provisions.

The body of section 2113 does not expressly indicate which statutory offenses are considered "bank robbery," and which are "incidental" crimes. However, as indicated above, the common understanding of the word "robbery" suggests most strongly that, as used in the statute's title, it means the forcible taking offense set forth in the first paragraph of section 2113(a), leaving the related but distinct crimes contained elsewhere in the statute, including the crime of felonious or larcenous entry set forth in the second paragraph of section 2113(a), as the "incidental" offenses.

This assumption is reinforced by the statute's history. As recounted in *Jerome* and *Prince*, the predecessor of section 2113 originally included *only* the forcible taking offense that now comprises the first paragraph of section 2113(a), plus the crimes of assault and homicide associated with that core offense. The distinct crime of felonious or larcenous entry, as set forth in the second paragraph of section 2113(a), as well as the crimes of nonforcible taking, receipt or possession of stolen property, use of a deadly weapon, and kidnapping, were added later, to fill in perceived gaps in the statute's effectiveness. Thus, contrary to defendant's suggestion, it seems logical to assume that the reference to "[b]ank robbery" in the statute's title would most likely be understood as describing the original forcible taking offense in the first paragraph of section 2113(a), while the remainder of the statutory offenses, including the crime described in the second paragraph of section 2113(a), are "incidental."[11]

---

[11] We realize that the term "robber" has occasionally, and casually, been used to refer to one convicted under the "larcenous taking" provisions of section 2113(b) as distinct from a forcible taker convicted under section 2113(a). As recounted in *Heflin v. United States* (1959) 358 U.S. 415 [3 L.Ed.2d 407, 79 S.Ct. 451], section 2113(c), which punishes the knowing receipt or

In any event, as we have indicated, we do not rely exclusively on the isolated phrase "bank robbery" included in the 1976 federal judgment form. In our view, the additional references to aggravated conduct committed under sections 2113(d) and 2113(e) bolster the inference that the crime for which defendant was convicted under section 2113(a) is a California serious felony.

Defendant notes decisions suggesting that sections 2113(a), 2113(b), and 2113(c) do not create separate crimes, but delineate more or less aggravated gradations, or ways, of committing the basic crime of stealing money or property from a federally insured institution. All these forms of the single crime, defendant insists, rightly may be called "bank robbery."

But the decisions cited are inapposite to the issue before us. They all concern only whether one may be charged, convicted, and punished for more than one count, or under more than one provision of section 2113, for the same criminal act or transaction. (See, e.g., *Prince, supra*, 352 U.S. 322 [crime of entering bank with intent to rob is merged into consummated robbery]; *United States v. Marzano* (7th Cir. 1976) 537 F.2d 257, 272 [when theft from vault is of funds belonging to multiple banks, defendant may be charged with one violation of section 2113(b) for each bank whose funds were taken]; *Wright v. United States* (7th Cir. 1975) 519 F.2d 13, 15 [defendant cannot be separately sentenced under §§ 2113(a) (entry or forcible taking), 2113(b) (larcenous taking), and 2113(d) (violation of § 2113(a) or § 2113(b) with assault or use of deadly weapon) for same bank robbery]; *United States v. Gaddis* (5th Cir. 1975) 506 F.2d 352, 354 [defendant cannot be convicted and punished for both taking (§ 2113(a) or § 2113(b)) and possessing (§ 2113(c)) money or property taken in same bank robbery].)[12] None suggests that both the felonious entering and forcible taking forms of the offense set forth in section 2113(a) constitute "bank robbery."

Defendant urges that the notation on the 1976 federal judgment form cannot be considered a full, freestanding description of the nature of his 1976 conviction, because it stated that the conviction was "as charged in the First

---

possession of money or property stolen from a bank, credit union, or savings and loan association *in violation of section 2113(b)*, came into the law in 1940. A Senate report for the amendment was captioned " 'Punishment for Receivers of Loot From Bank Robbers.' " (*Heflin, supra*, at p. 419.) The *Heflin* majority itself, rejecting a claim that one could be convicted and punished under both sections 2113(b) and 2113(c), opined that "it seems clear that subsection (c) was not designed to increase the punishment for him who robs a bank but only to provide punishment for those who receive the loot from the robber." (*Heflin*, at p. 419; see also *United States v. Gaddis* (1976) 424 U.S. 544, 547–548 [47 L.Ed.2d 222, 96 S.Ct. 1023] [following *Heflin*].) In this case, however, there is no confusion whether defendant was convicted under section 2113(a) or section 2113(b).

[12] The judgment in *United States v. Gaddis, supra*, 506 F.2d 352, was vacated by the United States Supreme Court and remanded by that court on the issue of remedy only. (*United States v. Gaddis, supra*, 424 U.S. 544, 548–551.)

Count of the Indictment." He reasons that the federal judgment form thus referred to, and incorporated by reference, what must be a more detailed specification in the indictment of the facts underlying the charges. Therefore, he insists, the indictment must be consulted to determine the exact nature of the conduct for which he was convicted. The People not having produced that document, he concludes, the evidence was insufficient to prove a serious felony.

We are not persuaded. That the 1976 federal judgment form indicated defendant had pled to the *full extent* of the charges set forth in "the First Count of the Indictment" does not detract from the description of those charges set forth on the face of the form. For the reasons we have explained, the notation on the federal judgment form, in and of itself, gives rise to the strong prima facie inference that defendant pled to, and was convicted of, a crime California considers a serious felony. In the absence of rebuttal evidence, the instant trial court was entitled to draw that inference. Indeed, if the 1976 indictment cast doubt on the apparent meaning of Judge Wilkins's notation, *defendant was free to introduce the indictment in his own defense.* He made no effort to do so.[13]

Defendant cites *Jones, supra,* 75 Cal.App.4th 616 for the proposition that a reference to "bank robbery" in a federal judgment record does not reliably establish the defendant's conviction under section 2113(a) was for taking bank property by force and violence or intimidation. In *Jones,* the only evidence the prosecution presented concerning the nature of the defendant's prior section 2113(a) conviction was (1) a " 'Judgment and Commitment' " form indicating he had pled guilty " 'to the lesser included offense of violation of . . . Section[] 2113(a) [the Indictment herein charging a violation of Title 18, United States Code, Sections 2113(a) and 2113(d)]' " and (2) a fingerprint card, signed by the defendant, indicating that the charge was " 'Bank Robbery.' " (*Jones, supra,* at p. 631.)

The *Jones* court first noted that the "Judgment and Commitment" form, by simply recording a conviction under section 2113(a), did not reliably disclose anything beyond a plea to the least adjudicated elements set forth in that statute. This was so, the court said, even though the form recited that the

---

[13] By referring to offenses "as charged" in the first count of the indictment, the federal judgment form eliminated any concern that the conviction or convictions under sections 2113(a), 2113(d), and 2113(e) might simply represent an illogical negotiated compromise, pursuant to which, by agreement, the section 2113(a) conviction was under the "felonious or larcenous entry" prong of the provision. On the contrary, the federal commitment form recites that the sections 2113(a), 2113(d), and 2113(e) convictions were for the offenses of "armed bank robbery and . . . kidnapping, *as charged* in the First Count of the Indictment" (italics added), and further declared that "Count II of the Indictment is dismissed," thus suggesting that any compromise concerned the elimination of these unspecified additional charges.

defendant's plea was to a lesser included offense under section 2113(a) after he was charged under both subsections (a) and (d) of the statute. Such language, the court said, could mean either that he had pled under section 2113(a) (felonious entry or forcible taking) as a lesser included offense of section 2113(d) (felonious entry or forcible taking with assault or use of a deadly weapon), or that he pled to the lesser of the two offenses (i.e., felonious entry) under section 2113(a). (*Jones, supra,* 75 Cal.App.4th 616, 634.)

Addressing the issue of the fingerprint card, the Court of Appeal in *Jones* concluded that even if the card was admissible over the defendant's hearsay and relevance objections, its reference to "Bank Robbery" was also not a reliable indicator of conviction under the first (forcible taking) paragraph of section 2113(a). This, said the court, was because "[the] statute is entitled 'Bank Robbery and Incidental Crimes' and the reference on the fingerprint card is on its face only a reference to the statute as a whole." (*Jones, supra,* 75 Cal.App.4th 616, 633–634.)

We agree, for the reasons expressed by the *Jones* court, that the ambiguous references on the "Judgment and Commitment" form there at issue did not constitute evidence from which a rational trier of fact could find beyond a reasonable doubt that the defendant had been convicted for conduct constituting the California serious felony of bank robbery. The form merely recorded a plea and conviction under section 2113(a), without additional language appearing to describe the specific nature of the convictions. Further uncertainty was injected by the form's indication that the defendant was pleading to a lesser included offense within the original charges, themselves identified only by statutory numbers.

Here we do not confront such ambiguities. The 1976 federal judgment form at issue in this case specified that defendant's conviction under section 2113(a) was for a "bank robbery" that involved additional aggravating conduct, described as "arm[ing]" and "kidnapping," under sections 2113(d) and 2113(e). Nor, in contrast with *Jones,* was there any confusing suggestion that the conviction was for a lesser offense included within the original charge. On the contrary, the judgment form stated that the charges to which defendant was pleading were those originally set forth in the indictment. (See fn. 13, *ante.*)

We also agree that the fingerprint card considered in *Jones* was not reliable evidence of the nature of the conviction. There was no evidence the card had been prepared contemporaneously with the judgment by a court official charged with the duty of recording it accurately. (See *Delgado, supra,* 43 Cal.4th at pp. 1065–1066, 1070–1072.) For similar reasons here, the

1986 federal prison fingerprint card, describing defendant's 1976 conviction as for "ARMED BANK ROBBERY & KIDNAP," does not constitute reliable evidence of the nature of the conviction.

■ On the other hand, we need not, and do not, decide whether *Jones* was correct in suggesting that a bare reference to "bank robbery" in the official record of a prior conviction under section 2113(a) can never reliably evidence a California serious felony. Here, as we have explained, defendant's 1976 federal judgment form not only described the offense as "bank robbery," but also indicated that the conviction involved aggravating conduct set forth in sections 2113(d) and 2113(e). Viewing the official record at issue here in its entirety, and absent any rebuttal, the instant trial court was entitled to conclude that defendant had been convicted of conduct constituting the California serious felony of bank robbery.[14]

We therefore hold that defendant's 1976 federal judgment form constituted sufficient evidence his conviction under section 2113(a) was for the California serious felony of bank robbery and thus qualified to enhance his sentences for the current offenses. This conclusion makes it unnecessary to consider the People's alternative contention that the judgment form's additional references to "arm[ing]" and "kidnapping" under sections 2113(d) and 2113(e) independently established his convictions for other California serious felonies. (See, e.g., Pen. Code, § 1192.7, subd. (c)(20) [kidnapping], (23) [personal use of dangerous or deadly weapon], (31) [assault with deadly weapon].)

---

[14] By the same token, however, we do not concur with the reasoning of *People v. Guerrero* (1993) 19 Cal.App.4th 401 [23 Cal.Rptr.2d 803], a case with which *Jones* disagreed. In *People v. Guerrero*, the federal judgment recited that the defendant had been convicted of " 'robbery of a bank* in violation of Title 18 U.S.C. § 2113(a).' " (*People v. Guerrero, supra,* 19 Cal.App.4th at p. 403, italics added.) The Court of Appeal held that this was sufficient evidence of a California serious felony, but it did not rely on the "robbery of a bank" notation to do so. Instead, the Court of Appeal concluded simply that by pleading guilty to a violation of section 2113(a), the defendant necessarily "admit[ted] every element of the crime charged." (*People v. Guerrero, supra,* 19 Cal.App.4th at p. 407.) As *Jones* observed, that analysis is at odds with our subsequent decision in *Rodriguez, supra,* 17 Cal.4th 253, where we held that mere reference in the record of conviction to a statute that can be violated in more than one way establishes only the "least adjudicated elements" of the statutory offense, and does not disclose which way the statute was violated (*id.* at p. 261). We will disapprove the analysis of *People v. Guerrero* to that extent. On the other hand, for reasons set forth above, we need not decide whether *People v. Guerrero* reached the correct *result* on the particular facts of that case, i.e., whether the "robbery of a bank" notation in the federal judgment there at issue was sufficient to establish a conviction under the forcible taking prong of section 2113(a), and thus a California serious felony.

## CONCLUSION

The judgment of the Court of Appeal is affirmed. The reasoning of *People v. Guerrero*, *supra*, 19 Cal.App.4th 401 is disapproved to the extent it is inconsistent with the views expressed in this opinion.

George, C. J., Kennard, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.